Statement of the Case.
NICHOLLS, C. J.
The plaintiff, state and parish tax collector for the parish of St. Landry, alleged that the defendant was indebted to the state in the sum of $2,100, with 2 per cent, per month interest thereon from March 1, 1902,, until paid, and 10 per cent, additional on said sum, principal and interest, for attorney’s fees for licenses for carrying on the business of retailing liquors within the territorial limits of said parish during the year 1902; that said license had been delinquent since March 1, 1902; and that he was entitled to a rule on him ordering him to show cause why he should not pay said amount, or be ordered to cease from further pursuit of such business until after haying obtained a state and parish license.
He prayed that defendant be ordered to pay the state said amount, and to cease from further pursuit of such business until after haying obtained from said state and parish a license, unless he shouid show good cause to the contrary.
On this petition, and under an order of court, defendant was ruled to show cause why the judgment prayed for should not be rendered. Defendant answered, pleading a general denial.
On trial of the rule, judgment was rendered rejecting plaintiff’s demand, and he appealed.
Opinion.
The evidence established that the defendant was a farmer, living some 10 or 12 miles from the town of Opelousas; that he supplied his own laborers with provisions, which he purchased every Saturday at Opelousas; that he went with his cart on Saturday morning to receive these provisions, and returned with them to his farm the same afternoon; that he kept these supplies in a storeroom in his residence, and delivered them to the laborers as they were needed. Defendant took the stand on his own behalf. He testified that in May or June of 1902 a Mr. Boudreau started a logging camp at his (witness’) place, and the latter’s hands, as well as his own and others in the neighborhood, would ask him to bring them liquor from town. Generally he went to town once a week if the orders were large. The first order in fact was large. It was, he thought, 35 or 40 half bottles. He went to Mr. Dossmann, who was first deputy sheriff and tax collect- or, whom he reasonably supposed was posted in such matters, and asked him whether there would be any criminality in his bringing liquor in that way to different parties. He told him “No,” none at all, provided he would make a list, and take the name of each individual, with the amount of liquor needed; that he (Dossmann), who was a saloon keeper, would fill the order as called for; that he would not run any risk, provided he did not break any of the packages; provided also that he delivered it as he received it from him; and paid him cash for the liquor. He stated that he, out of his individual profits, would pay witness 10 per cent, commissions. Witness obtained a few orders—six or seven. He went to Opelousas, and had the orders filled. He did it openly. He had the whisky put in his wagon. He was hauling groceries for himself; sometimes hauling for> Mr. Boudreau, also, feed for horses and mules. He filled, he thought, five or six orders, and, to be safe about it, consulted his attorney about it some time in August. His attorney told him he was violating no law, but he would advise him to discontinue, for fear some one might give him some trouble. He did so from that time on. The parties giving him orders to get whisky would give him the money for the same in advance. He *419 would go with the money and the order, get the whisky, ■ and deliver the whisky to the party who had applied to him for it. For getting the order and filling it and delivering to the purchaser Mr. Dossmann would pay him out of his profits a commission of 20 per cent, on the amount of the order taken to him. The whisky was sold to the purchasers at Mr. Dossmann’s prices. At the time when taking the orders from Mr. Dossmann he never (sold) disposed of to anybody any whisky other than in the method indicated by Mr. Dossmann. He went to see Mr. Dossmann by reason of his being the tax collector for the parish, but witness discontinued after consultation with his attorney, being of opinion he might get himself into some trouble. Witness never carried on the business of a retail grocer. He did supply his own hands with plantation supplies out of his family storeroom. The outside public never made any purchases therefrom. Previous to receiving these orders and his agreement with Mr. Dossmann for a commission, he had been considerably annoyed by applications made to him to purchase whisky. He had never at any time sold whisky to any one, nor had he ever delivered any whisky to any one except in response to an order from the party who had originally given him the order. He kept the whisky in his pantry whenever the parties did not receive it before he got to his house. They would generally be at the gate to receive it. Sometimes the orders he received were made by parties acting for others as well as for themselves, but witness delivered on no occasion the whisky to any person other than the party who gave him the order to fill. Had any other person applied for it, he would not have it, because it was contrary to Mr. Dossmann’s instructions. None of the parties giving the orders ever fáiled to call for and receive the whisky.
Dossmann testified that he was then keeping a saloon; that he had some business dealings with defendant with reference to the sale of liquors. He solicited orders for whisky at Port Barre, and would bring the orders to him, and these orders would be filled by witness as designated—that is, by defendant’s order—and the whisky would be sent out to those people through him, and delivered to the customers. Witness allowed defendant 10 per cent, commission on the sales. The purchaser did not pay the commission. The whisky which these parties would purchase would be sold at the regular price, and for obtaining the order and returning it (the whisky) to the several purchasers witness paid defendant a commission of 10 per cent, on the amount of these sales. Witness was not selling whisky at all to the defendant. Defendant would bring in the orders from Tom, Dick, and Harry. Witness would fill the order. He would return with the contents, to be delivered to the several purchasers, and witness would pay him commission on the amount of the sales.
Le Blanc, the defendant, was simply witness’ solicitor, drumming up his orders, and returning the contents of the orders, and receiving a commission for doing this. Witness had paid his state license for 1902; also the town of Opelousas license for the same year. He was the deputy sheriff in charge of the tax collecting department of the sheriff’s office at the time. Defendant asked witness if he could take orders for him, and for witness to allow him (defendant) a commission, without his being harmed; and witness suggested to him to do so, telling him he would be perfectly safe in doing so. The business relations between them continued for about two months. Defendant never-bought (obtained) whisky from witness at all, except such as he obtained to fill these orders. If he kept- liquor at his house for the purposes of retailing it there, he did not get it from' witness. 1-Ie did not know of' his getting any elsewhere. The orders defendant brought him were always in writing. The name of each individual and the quantity desired were specified in the order, and the exact quantity ordered was furnished. This matter was done openly. Witness did not know who wrote the orders, and never-inquired whether the persons purporting to have given defendant the order really gave it. Witness had no reason to doubt it. He’ guided himself by what defendant told him. He took the orders. He ordered for the persons named, and witness delivered accordingly. Witness warned defendant that if he failed to place this whisky, when he got back, to the man whose name was on the order, he would have no right to dispose of it *421 to any one else. Told him distinctly that if he broke one of the packages, or delivered a package as belonging to one person who had not ordered it, he would be making himself liable. Witness believed that defendant really bought for the persons whose names appeared on the lists. He knew it from the orders, not personally. He could not say this of his own knowledge—that defendant delivered the whisky to the parties named. Witness would sell to any one who applied to him to purchase, but he would not allow them commissions.
Witness did not pay a parish license as a liquor dealer for the year 1902 because none was required of him. He was exempt. He conducted his business in the town of Opelousas, and had paid the town license. He did not pay the parish license, because under the Constitution of 1S9S and the charter of the town and a subsequent act of the Legislature, he was exempted from paying parish licenses—all persons doing business in the town of Opelousas—the town having exacted a license tax equal in amount to the parish tax.
The evidence shows that the police jury of the parish of St. Landry had imposed for the year 1902 a minimum tax license of $2,-000 and the council of the town of Opelousas had imposed a minimum tax town license of the same amount on persons conducting the' same business in the town. The effect of this condition of things. was to relieve the latter from payment of the parish license. It is attempted to bring into this case for ad: judication the question as to whether Dossmann, a saloon keeper, doing business as a retailer of spirituous liquors in the town of Opelousas, and paying his state and town' license, was authorized to extend and conduct a business outside of the town, but within the parish, without becoming liable for the “business” conducted outside of the town; but that question is not presented between the proper parties and under circumstances calling for any discussion. No demand is made herein against Dossmann. He is not a party to this litigation. The decision of this case does not depend upon the liability or nonliability of Dossmann to pay a parish license. If the defendant’s acts were such as to constitute them the conducting of the “business of a retailer of spirituous liquors” outside of the town of Opelousas, but within the parish of St. Landry, and he was conducting such business' not as agent or employe of another, but individually on his own account, he would unquestionably be liable personally for the license. The fact, however, that such a business was conducted would not render him liable civilly for payment of a license if his connection with the business was not as principal, but as agent or employ® of another. The principal, and not the employ® or agent,, would owe the license, and should be proceeded against under such circumstances;certainly where the principal and the agent or employ® are both residents of the parish-claiming the license, and within the process of the courts for that parish. Civil liability for the payment of a license for conducting the business of a retail dealer of spirituous liquors is something other than criminal responsibility for the act of unlawfully selling spirituous liquor without a license or in violation of the law. One cannot shelter himself from criminal responsibility for unlawfully selling liquor without a license by showing that in so doing he acted not on his own account, but as agent or employ®. In spite of his acting for another, he could he punished legally for his own illegal act, but, if proceeded against civilly for the “payment of a license” for the same act or acts as conducting the business of a retail dealer of spirituous liquors, he would be entitled to a judgment in his favor. A number of witnesses were examined in this case, but the district judge evidently accepted the testimony of Dossmann and the defendant as showing the actual facts, and upon the state of facts disclosed thereby rendered judgment in favor of the defendant. We have examined the testimony carefully, and are of the opinion that the court’s action and conclusions were correct. We see nothing in the record that would justify a conclusion that defendant was conducting the business of a retail dealer of spirituous liquors outside of the town of Opelousas in the parish of St. Landry. Whether Dossmann was doing so, and whether he came under legal liability for a license for the same, are matters foreign to this case. We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.